## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Forest Halvorsen, III,

        Plaintiff,

v.

Commissioner of Social Security,

        Defendant.

_____

Case No. 21-10951
District Judge Nancy G. Edmunds
Magistrate Judge Jonathan J.C. Grey

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Forest Halvorsen, III seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Halvorsen's application for disability insurance benefits under the Social Security Act. Halvorsen filed a motion for summary judgment (ECF No. 18) and the Commissioner filed a response and cross-motion for summary judgment (ECF No. 21). Halvorsen did not file a reply.

For the following reasons, the Court **RECOMMENDS** that Halvorsen's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

## I.    Background

### A. Procedural History

On November 4, 2019, Halvorsen filed a Title II application for a

period of disability. (Tr. 171.[1]) In the application, the claimant alleged that

his disability began on June 4, 2009. *Id.* On March 31, 2020, the application

was denied. (Tr. 94.) On June 1, 2020, upon reconsideration, the application

was denied again. (Tr. 86.) Halvorsen requested a hearing, and on September

22, 2020, he appeared with an attorney before Administrative Law Judge

Manh H. Nguyen ("ALJ"), who reviewed the case *de novo*. (Tr. 108, 32–53.)

In an October 5, 2020 decision, the ALJ found that Halvorsen was not

disabled. (Tr. 15–27.) The Appeals Council denied review on March 5,

2021, which made the ALJ's decision final. (Tr. 1–3; *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004).)

### B. The ALJ's Application of the Disability Framework

Under the Social Security Act, disability insurance benefits and

supplemental security income are available only for those who have a

"disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means the "inability to engage in any substantial gainful activity

---

[1] The administrative record appears on the docket at entry number 9. All references to it
are identified as "Tr."

2

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [their]

3

impairments and the fact that [they] are precluded from performing [their] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

Halvorsen, born on May 31, 1967, was 52 years old on the alleged disability onset date. (Tr. 171.) He has a high school equivalency diploma and past relevant work as a material handler and fork truck driver. (Tr. 26, 185.) He alleges he cannot work because of neck pain, status post cervical fusion, mid-back pain, status post thoracic spine pain, numbness and tingling in the upper extremities, lumbar spine pain, degenerative disc disease of the lumbar spine, lumbar radiculopathy, depression, and anxiety. (Tr. 54–55.)

The ALJ applied the five-step disability analysis and found at step one that Halvorsen had not engaged in substantial gainful activity since the alleged onset date of June 4, 2009. (Tr. 17.) At step two, the ALJ found that Halvorsen had the following severe impairments: degenerative disc disease of the spine status post decompression and fusion with radiculopathy; myalgia; chronic obstructive pulmonary disease ("COPD"); major

4

depressive disorder; and anxiety. *Id.* At step three, the ALJ found no evidence that Halvorsen's impairments met or medically equaled one of the listings in the regulations. (Tr. 18–20.) Next, the ALJ determined that Halvorsen has the RFC to perform light work with certain limitations:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb stairs and ramps, stoop, crouch, kneel, and crawl. The claimant and frequently balance. The claimant must use a cane for walking and balancing. The claimant cannot be exposed to occupational extreme cold and heat, humidity, and vibration. The claimant can never work around hazards, such as unprotected heights or unguarded/uncovered moving machinery. The claimant can remember and carry out simple instructions. The claimant cannot work at a production rate pace such as assembly line work. The claimant can tolerate occasional changes in a routine work setting. The claimant can frequently interact with supervisors and coworkers. The claimant can occasionally interact with the general public.

(Tr. 20.) At step four, the ALJ found that Halvorsen is unable to perform any past relevant work. (Tr. 26.) At step five, the ALJ denied Halvorsen benefits, finding that there are jobs in significant numbers in the national economy that Halvorsen can perform. (Tr. 26–27.)

## II.    Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter

differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted).

## B. Analysis

Halvorsen contends that the ALJ committed reversible legal error because (1) the ALJ improperly evaluated certain opinions and failed to account for certain moderate limitations; (2) the ALJ failed to properly evaluate Halvorsen's subjective complaints of pain; and (3) the ALJ posed a flawed hypothetical to the vocational expert. (ECF No. 18.) The Court addresses each in turn.

### 1.  The ALJ's RFC Determination

Halvorsen challenges the ALJ's evaluations of the opinions of Dr.
Neil Pasia,[2] Laura Fodor, and Michelle Simpson, arguing that the ALJ
should have included additional RFC limitations in accordance with those
individuals' recommendations. (ECF No. 18, PAGEID.697–704.) Halvorsen
also challenges the ALJ's evaluation of Halvorsen's moderate limitations in
concentration, persistence, or pace. (ECF No. 18, PAGEID.712.) The
Commissioner disagrees. (ECF No. 21, PAGEID.727–738, 742.)

### a. Dr. Neil Pasia

Dr. Pasia, spine surgeon, opined that Halvorsen may be permanently
disabled and could not return to his past job. (Tr. 499, 571, 606.)
Additionally, Dr. Pasia recommended that Halvorsen should maintain
"normal activity" and avoid "excessive bending, twisting, lifting, and
prolonged sitting." (Tr. 606.) The ALJ found these opinions to be
unpersuasive for vagueness, inconsistency with the record, and reach of
conclusions reserved for the Commissioner. (Tr. 25.)

The Social Security regulations describe five different categories of
evidence that may be considered, which includes medical opinions and other

---

[2] The ALJ refers to this physician as "Neil Pasa," and the Commissioner refers to this
individual as "Nail Pasla." (Tr. 25; ECF No. 21, PAGEID.731.)

medical evidence. 20 C.F.R. § 404.1513(a). A "medical opinion" is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions [in certain areas]." *Id.* at § 404.1513(a)(2).

The Court finds that Dr. Pasia's opinions are not "medical opinions" under the regulations because they merely directed Halvorsen to maintain "normal activity" and avoid certain "excessive" movements. These recommendations do not sufficiently identify what Halvorsen can still do despite his impairments. Moreover, even if Dr. Pasia's opinions constituted medical opinions, the ALJ properly evaluated them. In reviewing medical opinions, the most important factors for an ALJ to consider are supportability, or degree to which objective medical evidence supports the opinion, and consistency, or degree to which the opinion is consistent with other evidence. 20 C.F.R. § 404.1520c(c). Here, the ALJ reasoned that Dr. Pasia's findings were inconsistent with the claimant's "generally unremarkable" examinations and highlighted Halvorsen's improvement, citing numerous sources of objective medical evidence. (Tr. 25.)

Finally, statements that a claimant is or is not disabled or able to work are improper because that is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i). Those conclusory statements are "inherently

9

neither valuable nor persuasive," and ALJs have no obligation to analyze those statements. *Id.* at § 404.1520b(c). Accordingly, the ALJ was not required to assess Dr. Pasia's finding that Halvorsen may be permanently disabled.

### b. Laura Fodor

Laura Fodor, nurse practitioner and consultative examiner, opined that Halvorsen can "sit, stand bend stoop, push, pull, carry, button clothes, tie shoes, make a fist, pick up a coin or pencil and write, and open a door" and cannot stoop or squat down and return to a standing position. (Tr. 560.) The ALJ found this opinion to be unpersuasive for vagueness and inconsistency with the record. (Tr. 24.)

The Court finds that the ALJ did not err in his evaluation of Fodor's opinion. First, the ALJ adequately applied the statutory factors. As discussed above, the ALJ must consider the supportability and consistency of medical opinions. 20 C.F.R. § 404.1520c(c). Here, the ALJ considered the supportability and consistency of Fodor's opinion, referencing objective medical evidence. The ALJ discussed the inconsistencies within Fodor's report, Halvorsen's "unremarkable" examinations, and Halvorsen's documented improvements. (Tr. 24.) The ALJ further explained that he was

10

unable to evaluate Fodor's findings because Fodor did not specify how often Fodor would be able to engage in the listed activities. *Id.*

Second, even if the ALJ erred in his evaluation of Fodor's opinion, Halvorsen would not be entitled to remand. Halvorsen argues that the ALJ should have included limitations for Halvorsen's inability to stoop or squat down and return to the standing position. (ECF No. 18, PAGEID.702.) However, there are jobs in significant numbers that Halvorsen can perform, even with an inability to stoop or squat down. At step five, the ALJ concluded that Halvorsen can work as an assembler, packager, or general office clerk. According to the Dictionary of Occupational Titles, assembler and packager jobs do not require stooping or crouching.[3] *Dictionary of Occupational Titles*, 1991 WL 680396, §759.684-042 (defining the assembler position); 1991 WL 674467, § 525.687-118 (defining the packager position).

The assembler and packager jobs, combined, provide 100,000 positions in the economy, which constitutes a significant number of available jobs. (Tr. 27; *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905

---

[3] The Dictionary of Occupational Titles explicitly indicates that stooping and crouching activities "do[] not exist" in those positions. 1991 WL 680396, §759.684-042; 1991 WL 674467, § 525.687-118.

(6th Cir. 2016) (finding that 6,000 jobs nationwide constitute a significant number of available jobs)). The ALJ appropriately found that there are jobs in significant numbers that Halvorsen can perform, which includes 100,000 jobs that do not require stooping or crouching. Halvorsen thus would not be entitled to remand, even if the ALJ erred here. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x. 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547) (finding that an ALJ's error in evaluating an opinion is harmless if they "make[] findings consistent with the opinion").

### c. Michelle Simpson

Simpson, a nurse practitioner who treated Halvorsen, opined that Halvorsen frequently experiences pain that interferes with simple work tasks. (Tr. 615.) She also stated that Halvorsen is incapable of low stress jobs. *Id.* The ALJ found this opinion to be unpersuasive for inconsistency with the record and Simpson's limited treating relationship with Halvorsen. (Tr. 24.)

The Court finds that the ALJ did not err in his evaluation of Simpson's opinion. The ALJ adequately applied the statutory factors. As discussed above, the ALJ must consider the supportability and consistency of medical opinions. 20 C.F.R. § 404.1520c(c). Here, the ALJ considered the supportability and consistency of Simpson's opinion, referencing objective

12

medical evidence. The ALJ explained that Halvorsen's examinations were "generally unremarkable," while also acknowledging that imaging tests showed some abnormality. (Tr. 24.) The ALJ also identified Halvorsen's improvement in symptoms and control of symptoms. *Id.*

Accordingly, the Court finds that the ALJ properly evaluated Simpson's opinion.

## 2. Halvorsen's Subjective Pain

Halvorsen argues that the ALJ failed to properly evaluate his subjective complaints of pain. (ECF No. 18.) The Commissioner counters that the ALJ relied on substantial evidence to reach his conclusions regarding Halvorsen's subjective pain. (ECF No. 21, PAGEID.740–41.)

The Sixth Circuit states that "[a] claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012) (citation omitted). Pursuant to Social Security Ruling ("SSR") 16-3p, an ALJ must analyze the consistency of the claimant's statements with objective medical and other evidence in the claimant's record. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(a). To evaluate a claimant's subjective symptoms, ALJs must follow a two-step process. *Id.*

The ALJ must first confirm whether there is objective medical evidence of the underlying condition from an acceptable medical source. *Id.* If there is, the ALJ examines the intensity and persistence of the claimant's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.*

In doing so, the ALJ must consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any measures used to relieve symptoms; and (7) other factors concerning a claimant's functional limitations due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

Additionally, the Sixth Circuit has stated that an ALJ is not required to accept a claimant's subjective complaints. *Jones*, 336 F.3d at 475. In *McCready v. Comm'r of Soc Sec.*, the court discounted a physician's opinion because their observations were "merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or restrictions." 2012 WL 1060088, at *8 (E.D. Mich. 2012), report and recommendation adopted, No. 10-13893, 2012 WL 1059747 (E.D. Mich. Mar. 29, 2012).

14

Halvorsen concedes that the ALJ complied with the first step of the test, arguing that the ALJ erred in the second step. (ECF No. 18, PAGEID.709.) The Court finds that the ALJ relied on substantial evidence to reach his second step conclusions and therefore did not err.

In assessing Halvorsen's subjective complaints, the ALJ discussed Halvorsen's hearing testimony, a function report dated December 23, 2019, and numerous medical records, including hospital records, progress notes, and imaging results. (Tr. 20–25.) The ALJ highlighted Halvorsen's testimony about back pain, inability to walk more than five to ten minutes at a time, difficulty holding objects, and need for leg elevation. *Id.* The ALJ also noted that Halvorsen stated he has limitations with lifting objects over ten pounds. (Tr. 212.) The ALJ found that Halvorsen has impairments that would reasonably cause the alleged symptoms. (Tr. 21.) However, for the second step, the ALJ concluded that the objective medical evidence did not support Halvorsen's allegations regarding the severity of his symptoms or limitations. (Tr. 21.) In reaching this conclusion, the ALJ also evaluated the following records.

With respect to degenerative disc disease and myalgia, the ALJ discussed in detail several imaging reports of Halvorsen's spine from 2018 and 2019. (Tr. 21–22.) The ALJ concluded that the examinations were

15

generally unremarkable with certain listed exceptions and that Halvorsen "exhibited 5/5 strength; normal motor strength and tone; no edema or erythema; a normal gait, station, and coordination; normal deep tendon reflexes; no muscle atrophy; a negative Hoffman and Romberg sign; and the ability to toe and heel walk." (Tr. 22.)

With respect to COPD, the ALJ referenced the unremarkable chest imaging, pulmonary function test, and other examinations. (Tr. 23.) The ALJ noted that although COPD caused some limitations, Halvorsen's "lungs are clear to auscultation and exhibited a normal respiratory effort; no use of accessory muscles; good air movement; and no wheezing, rales, or crackles." *Id.*

With respect to major depressive disorder and anxiety, the ALJ assessed Halvorsen's unremarkable mental status examinations. He stated that medical professionals found Halvorsen to be alert, cooperative, and exhibited a normal mood and affect, pointing to numerous medical records and Halvorsen's sole treatment of medication management. *Id.* The ALJ also found that Halvorsen's depression and anxiety did not interfere with daily activities, citing numerous records in which Halvorsen reported he maintained his functionality. *Id.*

16

The ALJ therefore discussed Halvorsen's subjective complaints in accordance with the Social Security regulations.

### 3. Vocational Expert

Halvorsen contends that the ALJ failed to include Halvorsen's previous "credible testimony" and all functional limitations in a hypothetical posed to the vocational expert ("VE"). (ECF No. 18, PAGEID.711.) In response, the Commissioner argues that the ALJ properly relied on the VE's testimony. (ECF No. 21, PAGEID.741.)

To meet their step five burden, the Commissioner must make a finding "supported by substantial evidence that [Halvorsen] has the vocational qualifications to perform specific jobs." *Tarley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). This type of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [Halvorsen's] individual physical and mental impairments.'" *Tarley*, 820 F.2d at 779 (citation omitted).

First, as discussed above, the ALJ relied on substantial evidence to reach his conclusions regarding Halvorsen's testimony about subjective complaints.

17

Second, at the hearing, the ALJ posed a hypothetical to the VE, partially describing Halvorsen as follows: "This person can frequently balance. This person might use a cane for walking and balancing." (Tr. 48.) In the RFC determination, the ALJ concluded that Halvorsen "must use a cane for walking and balancing." (Tr. 20.) Halvorsen argues that the ALJ should have said "must" instead of "might" in his hypothetical about cane usage. Halvorsen contends that his need to use a cane is significant, citing Social Security Ruling ("SSR") 96-9p. (ECF No. 18, PAGEID.711.) SSR 96-9p states that the number of sedentary unskilled jobs for individuals may be eroded for those who use a hand-held assistive device. SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

The Court finds that the difference between the word "must" and "might" is immaterial. The ALJ alerted the VE to the fact that Halvorsen may use a cane; this included the possibility that Halvorsen might use a cane for all working hours. The hypothetical posed to the VE adequately portrayed Halvorsen's impairments.

Finally, at the hearing, the ALJ partially described Halvorsen to the VE as follows: "This person can remember and carry out simple instructions. This person can never work at a production rate pace, such as assembly line work." (Tr. 48.) Relying on testimony, a function report, and

18

medical records, the ALJ concluded that Halvorsen has a moderate

limitation in concentration, persistence, or pace. (Tr. 19.) Halvorsen argues

that the ALJ did not account for his moderate limitations in concentration,

persistence, or pace in the hypothetical, relying on one case from a non-

binding jurisdiction. (ECF No. 18, PAGEID.712.) The Commissioner argues

that the ALJ explicitly accounted for such limitations. (ECF No. 21,

PAGEID.742.)

The Court finds that the ALJ properly considered Halvorsen's

moderate limitation in concentration, persistence, or pace.

ALJs are not required to include the phrase "moderate deficiencies in

concentration, persistence, and pace" or other "[talismanic] language" in their

hypotheticals. *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL

1304991, at *16 (E.D. Mich. Mar. 31, 2014) (citing *Smith v. Halter,* 307 F.3d

377, 379 (6th Cir. 2001)). In the Eastern District of Michigan, "there is no

bright-line rule requiring remand whenever an ALJ's hypothetical includes a

limitation of 'unskilled, routine work' but excludes a moderate limitation . . .

Rather, the Court must look at the record as a whole and determine if

substantial evidence supports the ALJ's RFC." *Smith v. Comm'r of Soc. Sec.*,

2013 WL 6094745, at *8 (E.D. Mich. Nov. 20, 2013) (citations omitted). Some

courts have found that remand is warranted when an ALJ does not incorporate

19

a moderate limitation in concentration, persistence, or pace in their

hypothetical. *E.g.*, *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7; *see*

*also Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich.

2009). On the other hand, other courts have found that limitation to "simple"

work sufficiently accounts for moderate impairments. *E.g.*, *Bohn-Morton v.*

*Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005); *see also*

*Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *3

(E.D. Mich. Sept. 30, 2010).

In this area, cases generally fall into three categories: (1) those in

which a medical expert found a moderate limitation in concentration,

persistence, or pace, (2) those in which the ALJ concluded that there was

such a limitation, and (3) those in which a medical expert found that the

claimant has such a limitation but ultimately concluded that the claimant can

work. *Hicks v. Comm'r of Soc. Sec.*, No. 10-CV-13643, 2011 WL 6000714,

at *7–8 (E.D. Mich. Aug. 30, 2011), report and recommendation

adopted, No. 10-13643, 2011 WL 6000701 (E.D. Mich. Nov. 28, 2011).

This case falls into the second category, which requires the ALJ to

incorporate the limitation in concentration, persistence, or pace "in some

way or form" into the hypothetical questions asked of the VE. *Boley v.*

*Astrue,* No. 11-10896, at *16 (E.D. Mich. Feb. 10, 2012) (citing *Hicks*, No.

20

10-CV-13643, at *8). In highlighting Halvorsen's limitation to "simple instructions" and inability to work at a "production rate pace," the ALJ appropriately incorporated Halvorsen's moderate limitations "in some way or form" into his hypothetical. *Mortzfield*, 2014 WL 1304991, at *1 (finding that the inclusion of "simple" tasks in a hypothetical satisfactorily incorporated the claimant's moderate limitation in concentration, persistence, or pace).

Moreover, the Sixth Circuit held that a limitation to "simple unskilled routine" work failed to convey the pace-based restrictions indicated by a claimant's moderate limitations in concentration, persistence, or pace. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516–17 (6th Cir. 2010). Courts in the Eastern District in Michigan have also found that "moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work." *Lewicki*, 2010 WL 3905375, at *2. Unlike the ALJ in *Ealy*, the ALJ here did not ignore Halvorsen's pace-based limitations. In addition to restricting Halvorsen to tasks with "simple instructions," the ALJ noted Halvorsen's inability to work at a "production rate pace." (Tr. 20.)

Finally, where a hypothetical and ALJ's finding of "moderate" limitations are not incompatible, remand is not warranted. *Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *11 (E.D. Mich. June 16,

2008). Looking to the record as a whole, the Court concludes that remand is not warranted here. In his opinion, the ALJ noted that Halvorsen testified he had difficulty with focus and concentration. (Tr. 19.) The ALJ also found, however, that Halvorsen demonstrated an ability to finish tasks and engage in daily activities, albeit with physical limitations. *Id.* For example, Halvorsen self-reported that he can pay his bills, count change, use a checkbook, and handle a savings account. (Tr. 198.) Halvorsen also did not report having difficulty with concentration when prompted in two function reports. (Tr. 200, 212.) The hypothetical of "simple instructions" and no "production rate pace" are not incompatible with the ALJ's finding of moderate limitations. *See Hess*, 2008 WL 2478325, at *8 (affirming the ALJ's decision because the record supported a finding that the claimant could perform unskilled work).

The ALJ's step five conclusion is therefore supported by substantial evidence.

## III.   Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that Halvorsen's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Dated:   June 2, 2022                    <u>s/**Jonathan J.C. Grey**</u>
                                         Jonathan J.C. Grey
                                         United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System on June 2, 2022.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager